IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVE BARTOSEK, | ) |
| Petitioner, | ) |
| v. | ) Civil Action No. 04-360E |
| | ) JUDGE COHILL |
| S.C.I. ROCKVIEW, et al., | ) CHIEF MAGISTRATE JUDGE BAXTER |
| Respondents. | ) |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus be dismissed and that a certificate of appealability be denied.

### II.   REPORT

Petitioner, Steve Bartosek, is a state prisoner incarcerated at the State Correctional Institution at Rockview, located in Bellefonte, Pennsylvania. Bartosek is serving a sentence of 7 ½ to 15 years imprisonment imposed after Bartosek pled guilty to robbery and related offenses on September 11, 2000.

#### 1.   Procedural History.

On September 11, 2000, petitioner appeared before the Honorable Fred P. Anthony, in the Court of Common Pleas of Erie County, Pennsylvania, and tendered a plea of guilty to all of the charges filed against him. The plea colloquy shows that petitioner was informed of the possible sentences for the crimes charged (GPT 7-8)[1] and the elements of the offenses (GPT 8-12). He pled "guilty" to all counts. Petitioner told the court that he read and understood a written recitation of

---

[1] Numerals in parentheses preceded by the letters "GPT" refer to pages in the Guilty Plea Transcript of September 11, 2000.

his rights (GPT 13), and that he was aware that a mandatory 5 year sentence applied in his case (GPT 14).

Petitioner appeared for sentencing on October 12, 2000. His right to appeal was explained to him at the outset (ST 2-4)[2]. He signed a written explanation of his appellate rights (ST 5). Petitioner's attorney noted that petitioner's two co-defendants had already been sentenced, and that petitioner was aware of the sentences they received (ST 5, 10).

On October 19, 2000, petitioner filed a counseled Motion to Modify/Reconsider Sentence in which he asserted that his sentence should be reduced to a total of 5 to 10 years due to his youth (State Court Record, Docket No. 15). The motion was denied on October 23, 2000 (Id., Docket No. 16). Petitioner next filed, by new counsel, an untimely motion to withdraw his guilty plea on November 13, 2000 (id., Docket No. 17). He also filed an appeal from the judgment of sentence that same date (id., Docket No. 18). The trial court denied the motion to withdraw on the basis that it lacked jurisdiction due to the filing of a direct appeal (id., Docket No. 19).

Petitioner raised three claims on direct appeal to the Superior Court:

1. Was petitioner's guilty plea involuntary or was it made knowingly?
2. Was petitioner denied effective assistance of counsel in connection with his guilty plea?
3. Did the Court err in failing to hold a hearing on petitioner's Motion to Withdraw his Guilty Plea?

(Id., Docket No. 21 at 2). The Superior Court affirmed the judgment of sentence on September 21, 2001. The court began its analysis by noting that Pennsylvania law requires inquiry into six areas during a guilty plea colloquy: (1) the nature of the charges; (2) the factual basis for the plea; (3) whether the defendant understands his right to a jury trial; (4) whether the defendant understands the presumption of innocence; (5) whether the defendant is aware of the permissible ranges of sentences; and (6) whether the defendant is aware that a judge is not bound by a plea agreement unless he or she accepts it (Id. at 3). The Superior Court then made the following findings:

---

[2]   Numerals in parentheses preceded by the letters "ST" refer to pages in the Sentencing Transcript of October 12, 2000.

> Prior to entering his guilty plea, Assistant District Attorney Garrett Taylor ("Taylor") explained each of the above-mentioned rights to Bartosek . . . N.T., 9/11/00, at 3-5. When asked, Bartosek stated that he understood the rights explained to him by Taylor. Id. at 7. In addition, each of the criminal charges was explained to Bartosek, as well as the maximum possible sentences for each charge. Id. at 7-8. Bartosek was also informed that these sentences could be imposed consecutively, and that the Commonwealth was seeking the five-year mandatory minimum sentence for the charge of robbery. Id. at 8. Further, Bartosek was made aware that the sentencing judge was not bound by any sentencing recommendations. Id. at 4. When asked, Bartosek indicated that he understood the sentences that could be imposed for each of the charges. Id. at 8.
>
> Taylor also informed Bartosek of the factual basis for each of the charges, and Bartosek indicated that he understood the basis for each charge. Id. at 8-12. Finally, Bartosek testified at the guilty plea hearing that he understood the written guilty plea colloquy, and that he had gone over the document with his lawyer. Id. at 13.
>
> Thus, the record demonstrates that Bartosek participated in a complete and thorough written and oral colloquy. Bartosek's claim that his plea counsel was ineffective for promising Bartosek a sentence of time served is not supported by Bartosek's statements during the guilty plea colloquy. Accordingly, we cannot grant relief on these claims.

(Id., Docket No. 21 at 4-5). Petitioner did not seek review in the Supreme Court of Pennsylvania.

Petitioner next filed a petition pursuant to the Post Conviction Relief Act (PCRA) on September 16, 2002, and raised the following claim:

> I was told by my lawyer Anthony Logue that I had to make a plea when I appeared in court. Because if I take this case to trial and lose I would receive (85) years. So when you "you" get in court you must say yes I understand when the Judge ask okay. Now the D.A. are going to read off some charges and you are going to plea guilty to every charge. Then you would received (45 to 90) months and not 85 years. I told my lawyer I did not understand what was happening. He stated don't worry I'll take care of everything alright just make your Plea. I didn't know at the time understand what was happening so I did what the lawyer told me. He "coerced" me into making this plea of guilty to all of the charges. I reluctantly did what the Lawyer ask of me.

(State Court Record, Docket No. 22)(errors in original). Counsel was appointed to represent petitioner and filed a Petition for Leave to Withdraw as Counsel which had a "no-merit" letter attached thereto (id., Docket No. 28). Counsel noted that petitioner was attempting to again assert that plea counsel was ineffective in recommending that he plead guilty, an issue already addressed and rejected on direct appeal (id.). The trial court dismissed the PCRA petition finding that the voluntariness of petitioner's plea had been litigated on direct appeal (id., Docket Nos. 24 and 25).

The Superior Court affirmed the denial of PCRA relief on March 18, 2004, agreeing with the PCRA court that the voluntariness of petitioner's plea had been litigated on direct appeal (State Court Record, Docket No. 35). A single claim was raised in petitioner's subsequent petition for allowance of appeal:

> A) Whether the PCRA and Appellate Court committed legal error in adopting the no merit letter [from PCRA counsel] as it fails to comply with Turner/Finely, insofar as the last reason[ed] judgment failed to address the merits of plea counsel's assertion that appellant would receive the same sentence as his co-defendants.

(Commonwealth's Exhibit 3, Petition for Allowance of Appeal at 2). The Supreme Court of Pennsylvania denied the petition on November 30, 2004.

Petitioner now files the instant petition and presents the following claims:

1. Ineffective counsel.

2. Denied motion to withdraw plea.

3. Defendant should have received same sentence as co-defendants.

4. Guilty plea was coerced.

5. Failure of court to comply with Turner/Finley.

6. Illegal sentence as being the result of the state court using Batosek's father's prior record to determine guideline ranges.

7. Defendant was harassed and threatened by a Corrections Officer to plead guilty.

8. Trial counsel failed to cross-examine witnesses.

9. Commonwealth withheld nature of plea agreements with co-defendants.

10. Counsel did not investigate the existence of plea agreements with co-defendants.

11. Government interference prevented petitioner from raising these claims.

(Docket No. 3, ¶13). The Commonwealth has filed a response to the petition (Docket No. 12) and it is now ripe for disposition.

**2.    Exhaustion.**

State prisoners seeking habeas relief in federal court are required to exhaust available state court remedies. This requires that the claims presented in the federal court have already been presented in substantially the same form to the state's highest court, with identity of both facts and legal theory. Bond v. Fulcomer, 864 F.2d 306 (3d Cir. 1989). Even if the claims have been so presented to the state's highest court, "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. §2254(c); Castille v. Peoples, 489 U.S. 346 (1989). And, although the exhaustion requirement is not jurisdictional, it "should be strictly adhered to because it expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." Landano v. Rafferty, 897 F.2d 661, 669 (1990).

Claims 3 and 6-11 have never been presented to the state courts in any fashion. However, petitioner no longer has any means to raise these claims in the state courts since he has already filed one PCRA petition, and his conviction became final more than a year ago. 42 Pa.C.S.A. § 9545(b)(1)(petition, even second or subsequent, must be filed within one year of the time conviction becomes final). Exhaustion may, therefore, be excused in this case. "If a claim has not been fairly presented to the state courts but state law clearly forecloses review, see Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir.1998), 28 U.S.C. § 2254(b)(1)(B) (1988) (amended 1996), exhaustion is excused, see, e.g., Lambert [v. Blackwell], 134 F.3d [506] at 513, 517-19 [(3d Cir. 1997)]; Doctor v. Walters, 96 F.3d 675, 681 (3d Cir.1996), but the doctrine of procedural default may come into play." Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002). Thus, exhaustion is excused, but petitioner's failure to present his claims to the state courts will again be considered in the context of procedural default.

### 3.     Procedural default.

Like the exhaustion requirement, the procedural default doctrine is based upon notions of comity and federalism. The procedural default barrier rests upon the "independent and adequate state grounds" doctrine, which dictates that federal courts will not review a state court

- 5 -

decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

A state's procedural rules are entitled to deference by federal courts, and violation of a state procedural rule may constitute an independent and adequate state ground for denial of federal review of habeas claims. Coleman v. Thompson, 501 U.S. at 750. Violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), cert. denied, 116 S.Ct. 1027 (1996).

Federal habeas review is not available to a petitioner whose constitutional claims have not been addressed on the merits due to procedural default unless such petitioner can demonstrate: 1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. at 750.

Petitioner has not properly presented claims 3 and 6-11 to the state courts since he failed to present them on direct appeal or through his PCRA petition. Commonwealth v. Bond, 819 A.2d 33, 39 (Pa. 2002)("Even if this Court were to assume that these two claims of trial error were not previously litigated, they would be waived under the PCRA since appellant's present theories could have been presented on direct appeal."); 42 Pa.C.S. §9544(b)(issue is waived if petitioner failed to raise it and the issue could have been raised before trial, at trial, on appeal, in habeas corpus proceeding, or in prior proceeding under PCRA). Therefore, state court procedural default bars review of these claims in this court absent petitioner satisfying the "cause and prejudice" standard.

To satisfy the cause standard, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). Petitioner asserts as his 11th claim that he was prevented from raising his claims due to government "inference" [sic]. He asserts that unspecified documents were not released to him, making review of this claim difficult.

However, a review of the claims petitioner failed to raise, in the context of the available record, renders this assertion baseless. With respect to petitioner's third claim, if petitioner believed he should have received the same sentence as his co-defendants, he could have raised this issue at any time, even prior to his guilty plea, since his co-defendants had already been sentenced when petitioner pled guilty. A similar analysis applies to each of petitioner's remaining defaulted claims. Petitioner was certainly aware of, or should have been aware of, the basis for his claims that his sentence was improperly computed on the basis of erroneous information, and that counsel failed to investigate the existence of plea bargains with petitioner's co-defendants. Likewise, petitioner was certainly aware of any threats which may have been made to induce his plea prior to the filing of his state court appeals. Thus, petitioner does not offer any credible explanation for his failure to properly raised his claims in the state court and, accordingly, has not established cause for those defaults.[3]

Because Petitioner has failed to establish cause for his procedural defaults, the Court need not consider the question of actual prejudice. See Murray v. Carrier, 477 U.S. 478, 495 (1986).

Although petitioner cannot demonstrate the necessary "cause," this court may still review his claims if he can show that a "fundamental miscarriage of justice would result from a failure to entertain the claim." McCleskey, 499 U.S. at 495. This court may use its discretion to correct a fundamental miscarriage of justice if it appears that a "constitutional violation probably

---

[3] To the extent that petitioner may be asserting that state court counsel rendered ineffective assistance, such a claim may constitute cause for a procedural default. Here, however, petitioner's failure to preserve claims in his PCRA proceedings is an independent and adequate basis for finding procedural default. "There is no constitutional right to an attorney in state post-conviction proceedings. Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (applying the rule to capital cases). Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. See Wainwright v. Torna, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective assistance)." Coleman v. Thompson, 501 U.S. at 752. Thus, the alleged ineffectiveness of PCRA counsel in failing to raise issues cannot constitute "cause" for purposes of procedural default.

resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. See also Coleman, 501 U.S. at 748; McCleskey, 499 U.S. at 502. Under the "miscarriage of justice" standard, a petitioner must present new evidence of innocence and persuade the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. Schlup v. Delo, 513 U.S. 298 (1995). This is a stronger showing than is required to establish prejudice and is found only in a truly "extraordinary" case. Id. To succeed on an actual innocence claim, a petitioner must invoke "reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), and "show that it is more likely than not that no reasonable juror would have convicted him in light of new evidence presented in his habeas petition." Schlup, 513 U.S. at 327.

Here, petitioner's sentencing claims (3 and 6) relate to discretionary aspects of the sentence imposed. As noted above, petitioner was informed during his plea colloquy that a mandatory sentence of 5 years would be applied in this case, and that the court was free to sentence as it saw fit with respect to the remaining charges. Indeed, the state court's sentence was manifestly within the legal limits, and neither of these claims raises an issue of actual innocence.

Petitioner's claims 7-11 likewise do not implicate actual innocence since they are merely offered as a means of attacking the voluntariness of petitioner's guilty plea (or, with respect to claim 11, to act as a means of excusing his failure to raise other claims in a timely fashion in the state courts). The state court determined that petitioner tendered a fully informed and knowing plea of guilty to the charges. Petitioner's complaints concerning alleged threats by a corrections officer (which petitioner did not mention at all during state court proceedings) and his complaints concerning plea counsel's advice, simply do not amount to a claim of actual innocence. In fact, petitioner nowhere asserts that he is actually innocent of the crimes charged. Petitioner cannot, therefore, overcome the procedural default with respect to claims 3 and 6-11.

### 4. Merits.

Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations. 28 U.S.C. § 2254. Specifically, a federal

court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. Id. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

A federal court may not issue the writ unless it concludes that the state court's adjudication resulted in a decision that was "contrary to," or an "unreasonable application of," clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Recently, in Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court discussed the independent meanings of the "contrary to" and "unreasonable application" clauses contained within § 2254(d)(1).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 411-413.

The Supreme Court further clarified that a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. Id. at 409. "Under §2254(d)(1)'s unreasonable application clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Petitioner asserts that counsel was ineffective in either coercing him to plead guilty, or in failing to inform him of his rights prior to the plea (Claims 1 and 2). He also asserts that the

trial court should have permitted him to withdraw his plea for the same reasons (Claim 4). Each of these claims is defeated by the state court's findings and ruling concerning the validity of his guilty plea. Specifically, the Superior Court made factual findings that petitioner evinced an understanding of the rights he was waiving, and that he was informed of the direct consequences of his plea. A review of the guilty plea transcript supports these findings.

Whether a plea of guilty is voluntary for purposes of the federal constitution is a question of federal law. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). To determine whether a guilty plea represents a voluntary and intelligent choice, a reviewing court must examine the totality of the circumstances surrounding the plea. Brady v. United States, 397 U.S. 742, 749 (1970). To ensure that a plea is both knowing and voluntary, it cannot have been induced through misrepresentation or coercion, Brady, 397 U.S. at 750, the defendant must have notice of the nature of the charge(s) against him, Henderson v. Morgan, 426 U.S. 637, 645 (1976), the defendant must have an understanding of the law in relation to the specific facts at issue, McCarthy v. United States, 394 U.S. 459, 466 (1969), and the defendant must appreciate the consequences of the plea, i.e., he must understand the rights he is surrendering through his plea. In reviewing whether a guilty plea is "voluntary" for purposes of the U.S. Constitution, the federal courts must apply federal law. Zilich v. Reid, 36 F.3d 317, 320 (3d Cir. 1994). Id.

Once entered, a defendant does not have an absolute right to withdraw a guilty plea. United States v. Isaac, 141 F.3d 477, 485 (3d Cir. 1998). Rather, a plea of guilty entered by one fully aware of the direct consequences must stand unless induced by threats, misrepresentation, or improper promises. Mabry v. Johnson,(1978) 467 U.S. 504, 509 (1984). It is only when a defendant is not fairly apprised of the direct consequences of pleading guilty that he may challenge his guilty plea under the Due Process Clause. Id.

Here, the state court's findings are entitled to a presumption of correctness, and petitioner has not presented clear and convincing evidence that the findings are incorrect. Hence, the state courts' conclusion that petitioner's plea was knowing and voluntary is not an unreasonable application of federal law to the facts of this case. Mabry v. Johnson, 467 U.S. 504, 509 (1984)(plea of guilty must stand absent proof that the defendant was unaware of the direct consequences of his

plea, or if it was induced by threats, misrepresentations or improper promises), citing Brady v. United States, 397 U.S. 742, 755 (1970). Therefore, petitioner's claim that the trial court should have granted the motion to withdraw the plea (Claim 4) or that the plea was coerced (Claim 2) must fail.

Likewise, petitioner's claim that counsel was ineffective is also rendered meritless by the state court's findings. In this respect, the familiar two-prong standard from Strickland v. Washington, 466 U.S. 668, 684 (1984) applies, and for a claim to succeed a court must find both that: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. This test also applies to ineffective assistance of counsel claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57 (1985); Meyers v. Gillis, 142 F.3d 664, 666 (3d Cir. 1998). The first prong may be shown in several ways, e.g., where a plea offer is never communicated to the client; where plea information is communicated so incorrectly that it undermines the client's ability to make an intelligent decision whether or not to accept a plea offer, or where a guilty plea is induced by misleading statements of defense counsel. To satisfy the second "prejudice" prong, a defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have proceeded to trial. Hill, 474 U.S. at 58-59. A federal habeas petitioner seeking to withdraw a guilty plea based upon the ineffective assistance of counsel must show that counsel's advice was not within the range of competence demanded by attorneys in criminal cases; only serious derelictions on the part of counsel entitle a petitioner to relief. Siers v. Ryan, 773 F.2d 37 (3d Cir. 1985).

As noted above, the state courts have explicitly found that the plea in this case was knowing and voluntary. Petitioner's claim that counsel was ineffective for failing to explain his rights or for "coercing" him to plead guilty (by detailing the maximum sentence he potentially faced) must be rejected. The state court has properly concluded that petitioner entered a knowing and intelligent plea.

Lastly, petitioner asserts that the PCRA court improperly permitted counsel to file a "no-merit" letter (Claim 5). This claim does not warrant relief because there is no constitutional right to legal representation during a state court collateral appeal, Pennsylvania v. Finley, supra, and,

accordingly, no constitutional prejudice could have accrued even if the no-merit letter was somehow deficient.

### B. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253(as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong..." Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000). A petitioner meets this standard if he can show that the issue "is debatable among jurists, or that a court could resolve the issue differently, or that the question deserves further proceedings." McCracken v. Gibson, 268 F.3d 970, 984 (10th Cir. 2001). Under 28 U.S.C. § 2253(c)(3), the district court must identify which specific issues satisfy the standard. Because Petitioner has not made such a showing, a certificate of appealability should be denied.

### CONCLUSION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be dismissed and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                                /s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: July 31, 2006